Case No. 24-3755

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Terry Palmer,
Appellant-Appellant

-v-

Department of The Air Force,
Appellee-Appellee

Appeal from the United States District Court
for the Southern District of Ohio, Western Division

---

Brief of Appellant-Appellant
Terry Palmer

---

David M. Duwel
(Ohio Bar #0029583)
Attorney for Appellant Terry Palmer
130 W. Second Street, Suite 2101
Dayton, Ohio  45402
937.297-1154 phone
937.297-1152 fax
david@duwellaw.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CORPORATE DISCLOSURE FORM

Sixth Circuit
Case No: 24-3755

Case Name:
Terry Palmer v. Department of The Air Force

Name of counsel:

David M. Duwel

Pursuant to 6th Cir. Rule 26.1, Terry Palmer makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    No.

CERTIFICATE OF SERVICE

I certify that on February 21, 2025 the foregoing document was served on all parties or their counsel of record using the Court's electronic filing system which will notify Appellee's counsel of its filing and provide an electronic copy of this brief.

/s/ David M. Duwel
David M. Duwel

## Table of Contents

| | |
|---|---|
| Corporate Disclosure Form | ii |
| Table of Contents | iii |
| Table of Authorities | iv, v, vi |
| Statement in Support of Oral Argument | vii |
| Jurisdictional Statement | 1 |
| Statement of Issues Presented for Review | 1 |
| Statement of the Case | 2 |
| Statement of Facts | 2 |
| Summary of Argument | 8 |
| Argument | 8 |
| Conclusion | 19 |
| Certificate of Compliance | 21 |
| Certificate of Service | 21 |
| Designation of Relevant District Court Documents | 22, 23 |

Table of Authorities

<u>Cases:</u>

*Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998)    14

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008)    9

*Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)    14

*Buggs v. FCA US, LLC*, No. 22-1387, 2023 U.S. App. LEXIS 1591
at *9-10, 2023 WL 2468378 at *3 (6th Cir. Jan. 20, 2023)    10

*Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707
(6th Cir. 2012)    14

*Crawford v. TRW Auto*. U.S. LLC, 560 F.3d 607, 611 (6th Cir. 2009)    9

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352
(6th Cir. 1998)    12

*Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224
(2d Cir. 1994)    9

*Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 639
(6th Cir. 2009)    16

*Hamilton v. GE,* 556 F.3d 428 (6th Cir. 2009)    16

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)    15

*Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020)    13

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973)    10

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007)    10

*Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)    12

*Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)    14

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)   16

*Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)   13, 14

*Randolph v. Ohio Dep't of Yough Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)   13

*Smith v. Rock-Tenn Serv., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016)   13

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)   9

*Taylor v. Geithner*, 703 F.3d 336 (6th Cir. 2013)   16

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011)   14

*Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015)   15, 16

Statutes:

28 U.S.C. § 1291 1

28 U.S.C. §1295(1) 1

28 U.S.C §1441 1

42 U.S.C. §2000e 1

Fed. R. Civ. P. 56(c) 9

42 U.S.C. §2000e-2(a)(1) 10

42 U.S.C. §2000e-3(a) 15

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Palmer does not believe that oral argument is necessary. The district court entered a summary judgment and terminated the entire case. The issues advanced in this brief are well settled, and it is clear that the district court erred in its summary judgment decision and in terminating this case.

In the event, the court is inclined to entertain oral argument, Appellant Palmer requests the opportunity to make oral argument and welcomes the opportunity to address any issues that the Court may request.

## Jurisdictional Statement

Pursuant to 28 U.S.C. §1291, United States Courts of Appeals have jurisdiction to review all final decisions of the United States District Courts. According to 28 U.S.C. §1295(1), an appeal from a reviewable decision of the District Court may be taken from a final judgment of the United States District Court for the Southern District of Ohio, Western Division at Dayton (the "District Court"), thereby giving this Court jurisdiction. The District Court had jurisdiction over the original matter pursuant to 28 U.S.C. §1441, as the matter involved a civil action arising under the laws of the United States, specifically Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e.

This appeal stems from a final judgment disposing of all of Appellant's claims through the granting of summary judgment by the District Court in favor of the Appellee. The Judgment Order dismissing all claims of the Appellant, Terry Palmer, was filed July 29, 2024. *See* Summary Judgment Decision, RE 23, Page ID 1056-1078. A Notice of Appeal was timely filed by Terry Palmer on August 28, 2024, appealing the decision granting summary judgment.

## Statement of Issues Presented For Review

1. Whether the District Court erred by granting summary judgment on Appellant's race and sex discrimination claims

2. Whether the District Court erred in granting summary judgment on Appellant's hostile work environment claim.

1

3.    Whether the District Court erred in granting summary judgment on Appellant's retaliation claim.

## Statement of The Case

Terry Palmer filed this lawsuit initially in the District Court, alleging claims of wrongful discharge and the creation of a hostile work environment, predicated on his race, sex and retaliation discrimination under the Civil Rights Act of 1964.

On July 29, 2024, the District Court ruled that Appellee, Department of The Air Force (Appellant's employer) was entitled to summary judgment and terminated the entire case on the docket. Appellant filed his Notice of Appeal with this Court on August 28, 2024.

## Statement of Facts

Plaintiff, an African-American male, began working for the Air Force in 1985. (Doc. No. 16-1 at Page ID 131). Plaintiff first arrived at Wright-Patterson Air Force Base ("WPAFB") in 1996 and had held a variety of positions on base during his career. (*Id*. at PageID 138-41).

A.    Initial Incident

In September 2017, Appellant was working in foreign military sales for the F-16 fighter bomber directorate. (*Id*. PageID 148-151.) In September 2017, a co-worker accused Plaintiff of making a threatening gesture toward her. (*Id*. at PageID 153). In response to this complaint, Plaintiff was issued a letter of pending investigation. (*Id*. at PageID 187-88).

2

After receiving the letter on October 5, Appellant decided to ask a witness to the incident to go with him to meet with several supervisors. (*Id.* at PageID 189). The witness began to relate what he had seen in relation to the September 2017 complaint. (*Id.* at PageID 188-89). One of Appellant's supervisors, Walker, told the witness to stop speaking and stated that they would not listen to his account. (*Id.* at PageID 189-90).

In response to this incident, Appellant decided to speak with the Equal Employment Opportunity Office ("EEO"). (*Id.* at PageID 200.) On October 6, 2017, Plaintiff informed two higher level supervisors of his decision and informed Michele Simons that he was leaving the office to speak with the EEO office. (*Id.* at PageID 200-01.) Shortly after he arrived at the EEO office, Simons called to tell Plaintiff that Johnson wanted to speak with him. (*Id.* at PageID 201). Upon his return to the office, from visiting the EEO office, Plaintiff was informed by Johnson that he was being transferred to Air Force Security Assistance & Cooperation Directorate ("AFSAC"). (*Id.* at Page ID 202.) This action took place immediately after Appellant had contacted the EEO office, which Appellant believed to be an act of retaliation.

B.    Reassignment to AFSAC

From the outset Appellant opposed his reassignment to AFSAC and told his supervisor, Don Thompson that it was not in his best professional interest to go to

3

AFSAC and questioned why his accuser in the incident described above was also not also transferred to AFSAC. (Doc. No. 16-1 at PageID 210). Appellant advised his union representative that he wished to be assigned elsewhere in part because he believed that minorities were not treated well at AFSAC and AFSAC had a bad reputation among minority employees. (*Id*. at PageID 208, 217.) Appellant also believed his transfer to AFSAC was in retaliation for engaging in protected activity and filing an EEO claim as described above. (*Id*. at PageID 224.)

Nonetheless, Appellant began his new assignment with AFSAC on October 16, 2017. (*Id*. at PageID 232). Appellant's supervisor with AFSAC was Elaine Norsworthy ("Norsworthy"). (*Id*. at PageID 229-30).

For Plaintiff to perform his new role at AFSAC, it was necessary for him to gain access to the AFSAC systems. (*Id*. at PageID 238). However, an individual cannot have dual accounts for system access supporting two different organizations. (*Id*.) Plaintiff had to out-process from the F-16 bomber directorate in order to gain systems access at AFSAC. (*Id*.) In order to do so, Plaintiff needed to fill out DD Form 2875 for every system access he needed. (*Id*.)

By December 14, 2017, Plaintiff still had not gained complete systems access at AFSAC. (Doc. No. 16-2 at PageID 509-10). Norswothy instructed Plaintiff to send her the DD Form 2875's by 11:00 on December 14, 2017. (Doc. No. 16-2 at PageID 509). Appellant attempted numerous times to send the required

information to Ms. Norsworthy before the December 14, deadline but every time he sent the required information to Ms. Norsworthy, she failed to place an electronic signature on the right block of the form and send it back to Appellant promptly. When she failed to do so, Appellant was forced to start the process over again and Ms. Norwsworthy kept making the same mistake. (Doc. No. 16-1, PageID 261.) Appellant even alerted Ms. Norwsworthy about the error she was continuously making but she failed to recognize her mistake. *Id.* at PageID 262-263; also *see* Deposition Exhibit C (Doc. No. 16-2, PageID 511-517.) Appellant then attempted to meet with Ms. Norsworthy's supervisor, Marie Ely (Caucasian) to give his explanation about the deadline, but Ms. Ely refused to meet with him and instead elected to issue him a reprimand on February 18, 2018 which became final on April 4, 2018. (Doc. No. 16-1, PageID 274-278; Doc. 16-2, Page ID 509-510; 518.)

Once again, Appellant was denied a meeting with a supervisor to address alleged performance issues which resulted in him filing an additional EEO complaint. (*Id*. Page ID 284.).

C.    Reassignment to Delivery Reporting

Following his reprimand, Appellant was reassigned, on April 30, 2017, to the Delivery Reporting section within AFSAC. (Doc. No. 16-1 at PageID 295.)

On May 10, 2018, Darla Brumfield a Caucasian section chief in AFSAC, emailed Appellant because she had been informed that Appellant was allegedly directing a co-worker to complete some of his work. (Doc. No. 16-2 at PageID 529-531.) Brumfield informed Appellant that he did not have the authority to direct others to complete work for him. (*Id*. at PageID 529.) Appellant denied ordering someone to do his work and advised Brumfield that instead he was just trying to assist a new intern who had a habit of falling asleep on the job. Once again, Appellant requested a meeting with Brumfield and it was denied. (*Id*. PageID 298-299.)

Ms. Brumfield would subsequently accuse Appellant of delegating work to other employees and Appellant attempted to explain he was doing this to correct previously discovered work deficiencies but again Brumfield refused to meet with him and instead issued him a proposed five day suspension. (*Id*. PageID 318; also *see* Palmer Deposition Exhibit C (Docket No. 16-2 PageID 511-517.)

D.    Medical Issues Arise

As a result of all the previously mentioned incidents Appellant experienced significant stress, anxiety, and depression which resulted in Appellant going to the Base Emergency Room on August 8, 2018 and taking off work until October 22, 2018. (Doc. No. 16-2 at PageID 550-551.) This period of illness would lead to a new battle with Appellee over doctor's notes covering his leave. Eventually

Appellee would notice Appellant with a proposed removal which caused him to take a forced retirement.

Because at the onset of his illness, Appellant could not quickly obtain an appointment with his regular family doctor he was forced to go to an Urgent Care location. That doctor was concerned with Appellant's high blood pressure and ordered an EKG. The Urgent Care doctor also provided Palmer with a medical note covering him from August 8-10, 2018 which was provided to Appellee. The next week Appellant was able to meet with his regular physician Dr. Ryan Bayko on August 14, 2018 who would eventually supply medical notes taking Appellant off work until his return to employment on October 22, 2018. These notes were also provided to Appellee. (Doc. No. 16-1, PageID 337.) However, on August 15, 2018, Appellee had already began the process of declaring Appellant AWOL, which Appellant viewed as evidence of retaliation. (*Id*. PageID 339-340, 345.)

During his medical absence, no one told Appellant that the doctor notes he had provided were not acceptable under Air Force Policy. Further, Jonathan London (Darla Brumfield's supervisor) called Appellant in August 2018 and told Appellant he could provide complete medical documentation when he returned to work and to focus on recovering from his medical issues. (*Id*. PageID 346-347.) London then repeated this instruction on October 16-17, 2018. (*Id*. PageID 352.)

7

For most of this time period Appellant was paid for the hours he was missing as he had earned sick leave and annual leave. However, shortly after Appellee was notified that Appellant had filed a Congressional inquiry and in what Appellant viewed as retaliation, Appellee retroactively charged Appellant with over 300 hours of AWOL. (*Id*. PageID 355-356.) Appellant came to believe that Appellee continuously engaged in a pattern of retaliation towards Appellant every single time he engaged in protected activity, whether it was filing a grievance, a EEO charge or a Congressional inquiry.

On October 29, 2018, Appellant was served with a Notice of Proposed Removal. (Doc. No. 16-2 at PageID 598-600.) He was charged with being absent without leave ("AWOL") for 360 hours and failing to complete assigned duties. (Id.) Appellee denied all these allegations. (*Id*. PageID 378-381.) Plaintiff voluntarily retired, prior to a ruling on the Notice of Proposed Removal, on February 28, 2019. (Doc. No. 17-2 at PageID 928-929.)

## Summary of Argument

Summary judgment should not have been granted by the District Court because there were questions of fact as to whether Palmer could establish a race and/or sex discrimination claim and/or a hostile work environment claim and/or a retaliation claim.

## Argument

Review of a District Court's grant of summary judgment is made de novo.

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Summary

judgment is proper "if the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For

summary judgment analysis, all reasonable inferences are to be construed in favor

of Mr. Palmer, the nonmoving party. *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d

607, 611 (6th Cir. 2009).

When a case turns on the intent of one party a "trial court must be cautious

about granting summary judgment." *Gallo v. Prudential Residential Servs., Ltd.*

*P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). The disbelief of the reasons put

forward by the Appellee, together with the elements of the prima facie case, may

suffice to show intentional discrimination, rejection of the Appellee's proffered

reasons will permit the trier of fact to infer the ultimate fact of intentional

discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). While

such evidence does not require such a conclusion, all that is required to survive

summary judgment is sufficient evidence to permit a reasonable trier of fact "to

infer the ultimate fact of intentional discrimination." *Id*. at 511. Appellant believes

there are multiple issues of fact which the District Court ignored or refused to

consider in reaching its decision on the summary judgment motion.

I.     The District Court erred in granting summary judgment to Appellee on Appellant's race and sex discrimination claims

Appellant does not contend that he has direct evidence of discrimination pursuant to 42 U.S.C. §2000e-2(a)(1), and relies on circumstantial evidence of discrimination. Thereby, the burden shifting framework of *McDonnell Douglas v. Green* 411 U.S. 792 (1973) applies. Appellant must demonstrate: (1) that he was a member of a protected class (race and/or sex); (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by someone outside of the protected class, was treated less formally than a similarly situated individuals outside his protected class, or that other circumstances exist that support an inference of discrimination.

Appellee Air Force did not contest the first and third prongs of the prima facie case before the District Court. Therefore, the District Court was required to look to see whether Plaintiff was subjected to an adverse employment decision and whether similarly situated non-protected employees were treated more favorably or other circumstances exist that support an inference of discrimination.

An adverse employment action is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Buggs v. FCA US, LLC*, No. 22-1387, 2023 U.S. App. LEXIS 1591, at *9-10, 2023 WL 2468378, at *3 (6th Cir. Jan. 20, 2023) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007)).

Certainly, Appellant sustained an adverse employment action when he was reprimanded, given a five day suspension, charged with 360 hours of AWOL and noticed for proposed removal. The District Court clearly erred when it found that adverse employment actions did not exist in respect to the above disciplinary actions.

The District Court found that the April 4, 2018 letter of reprimand was not an adverse employment action as it was not accompanied by a negative change to Appellant's employment status. (Doc. No. 18 at PageID 1001.)

However the 2018 letter of reprimand was an adverse employment action as several additional disciplinary actions followed shortly thereafter such as the five day suspension and the notice of proposed removal. Indeed, the District Court did not even discuss the additional disciplinary actions in reviewing Appellant's sex and race claims, which would also constitute error.

B.   Treatment of Similarly Situated Employees/Other Circumstances Supporting An Inference of Discrimination

Appellee further contends that Appellant has failed to identify any similarly situated employee. The District Court erred in not considering Angela Brown, a Caucasian co-worker who was under the supervision of both Ms. Norsworthy as a similarly situated employee during Appellant's initial AFSAC reassignment. (Doc. No. 18 PageID 998; Doc. No. 21 PageID 1040; Doc. No. 16-1 PageID 423-425.)

To be treated as similarly situated, an employee must "[1] have dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). However, an exact correlation with the factors discussed in <u>Mitchell</u> is not required, and the Court, "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee and the purpose of Title VII and Section 1981 are not." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); served by an overly narrow application of the similarly situated standard").

Appellant has argued that Brown, a Caucasian female, is a sufficient comparator. (Doc. No. 21 at PageID 1040). Brown had performance issues. Appellee argued that Appellant failed to point to any evidence that Norsworty treated Brown differently from Appellant. (Doc. No. 22 at PageID 1046.) However, Appellant did testify that while he was having a normal conversation with Brown, she became agitated and threw something across the room. Palmer had never observed Brown behaving in similar manner with other Caucasian employees. In fact another co-worker reported Brown's behavior to Norsworthy. (Doc. No. 16-1 PageID 330-333, 438-441). Further, to satisfy the fourth prong of

McDonnell Douglas. Appellant is able to use evidence that suggests an inference
of discrimination as the reason for the adverse action, and there is significant
evidence in this case which creates an inference of discrimination.

2.     The District Court erred in granting summary judgment on
       Appellant's hostile work environment claim

To establish a hostile work environment claim based on race, the Appellant
must show: (1) [He] belongs to a protected class; (2) [he] was subject to
unwelcome harassment; (3) the harassment was based on race; (4) the harassment
affected a term, condition, or privilege of employment, and (5) the defendant knew
or should have known about the harassment and failed to take action. *Khalaf v.
Ford Motor Co.,* 973 F.3d 469, 482 (6th Cir. 2020) (citing *Phillips v. UAW Int'l,*
854 F.3d 323, 327 (6th Cir. 2017)).

Similarly, in establishing a claim of hostile work environment based on sex,
the Plaintiff must show: (1)[H]e or she was a member of a protected class; (2) he
or she was subjected to unwelcome sexual harassment; (3) the harassment
complained of was based on sex; (4) the charged sexual harassment created a
hostile work environment, and (5) the employer is liable. *Smith v. Rock-Tenn Serv.,
Inc.,* 813 F.3d 298, 307 (6th Cir. 2016)(citing *Randolph v. Ohio Dep't of Yough
Servs.,* 453 F.3d 724, 733 (6th Cir. 2006)).

Finally, to prevail on a retaliatory hostile work environment claim, a plaintiff
must show: (1) [H]e engaged in activity protected under Title VII; (2) the

defendant was aware that the plaintiff engaged in the protected activity; (3) the plaintiff suffered "severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the…harassment." *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012)(quoting *Morris v. Oldham Cnty.* Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)).

In determining whether the harassment is sufficiently severe or pervasive to create a hostile work environment, "the conduct in question must be judged by both an objective and a subjective standard." *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 251 (6th Cir. 1998) (quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). When evaluating these claims, courts "look[s] at the totality of the alleged [] harassment to determine whether it was sufficiently severe or pervasive to alter the conditions of [a plaintiff's] employment and create an abusive working environment." Phillips, 854 F.3d at 327 (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011)(alteration in original)).

Appellant described conduct that would create a hostile work environment. He has described numerous instances of being charged by Caucasian female employees with inappropriate behavior and/or workplace performance issues which he has requested to discuss with his Caucasian female supervisors. In almost every instance he was denied an opportunity to sit down with his supervisors to

explain his actions and instead received a written reprimand, a five day suspension and a notice of proposed removal. In none of these instances has Appellee offered any explanation as to why these meetings with supervisors were not held. This creates an inference of racial discrimination.

The District Court criticized Appellant for allegedly failing to identify any pervasive conduct following his engagement in protected activity such as filing EEO, IG and/or Congressional complaints. However, the Court then failed to consider how Appellant was treated the same day he filed an EEO Complaint and IG Complaint…reassigned to AFSAC over Appellant's objections or after being out of the office to discuss an EEO matter, he was told by his supervisor he was going to receive a written reprimand. (Doc. 16-1 PageID 245-246.)

3.     The District Court erred in granting summary judgment on Appellant's retaliation claim.

Title VII prohibits discrimination against a job applicant "because he has opposed any practice made an unlawful employment practice…or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. §2000e-3(a). A plaintiff alleging a claim of retaliation, as with a discrimination claim, may establish such a claim through direct or circumstantial evidence. *Yazdian v. ConMed Endoscopic Techs., Inc.,* 793 F.3d 634, 644 (6th Cir. 2015)(citing *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 543 (6th Cir. 2008)).

In this case Appellant does not rely on direct evidence, therefore, a prima

facie case of retaliation must be established as part of the burden-shifting

framework of McDonnell Douglas. <u>Yazdian</u>, 793 F.3d at 649. To establish a prima

facie case of retaliation, a plaintiff must show, "(1) he… engaged in protected

activity, (2) the employer knew of the exercise of the protected right, (3) an

adverse employment action was subsequently taken against the employee, and (4)

there was a causal connection between the protected activity and the adverse

employment action." *Hamilton v. GE*, 556 F.3d 428 (6th Cir. 2009)(quoting

*Niswander v. Cincinnati Ins. Co.,* 529 F.3d 714, 720 (6th Cir. 2008). To establish

an adverse employment action plaintiffs, "must show that a reasonable employee

would have found the challenged action materially adverse, which in this context

means it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." <u>Taylor</u>, 703 F.3d at 336 (quoting *Garner v.*

*Cuyahoga Cnty*. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009)).

Appellant identified several bases for his retaliation claim in the district

court action. These are the same matters referenced at the end of the previous

section.

First, on December 12, 2017, Appellant alleged that upon his return from an

EEO meeting, Norsworthy, his supervisor at the time, told him that he would be

reprimanded. (Doc. No. 16-1 at PageID 245.) He further alleges that Norsworthy

refused to explain why he was being reprimanded. (*Id*. at PageID 246.) Two months later, on February 12, 2018, Appellant was issued a Notice of Reprimand and a Decision of Reprimand was issued on April 4, 2018. (Doc. No. 16-2 at PageID 509-10, 518.) Appellee has asserted the reason for the reprimand stemmed from Plaintiff's failure to gain systems access at AFSAC in the months preceding the December 12, 2017, encounter. (*Id*. at PageID 509-10.) However, the timing of Norsworthy's statement that Appellant would be reprimanded was immediately following Appellant's return from the EEO office. The District Court seemingly dismissed this allegation due to four months following the warning/threat by Norsworthy and the decision on the proposed reprimand, conveniently forgetting that the proposed discipline was issued only two months later. So, the proper measurement here is two, not four months.

Second, Plaintiff alleges that he was threatened with AWOL, for arriving late to work on May 14, 2018. (Doc. Nos. 1 at PageID 3; 16-1 at PageID 323.) On that day Plaintiff had an EEO appointment, but had not informed his supervisor, Brumfield, what the meeting was about. (Doc. No. 16-1 at PageID 323-25.) Plaintiff also sought a meeting with "Linda Siny in the front office about the AWOL," but was denied a meeting. (Doc. No. 21 at PageID 1034.) This, Plaintiff asserts, is additional evidence that he was being retaliated against. (*Id*.)

A reasonable employee would have found these actions materially adverse, such that a reasonable employee could have been dissuaded from making a charge of discrimination. It is not required that Plaintiff suffered an actual injury, as the District Court stated on Page 20 of its Decision. (Doc. 23 PageID 1075.)

Third, Appellant alleged that the Notice of Proposed Removal was retaliation for filing a congressional complaint. (Doc. No. 21 at PageID 1036.) Appellant points to the fact that he was retroactively charged with 376 hours of AWOL after he informed his supervisors that he had filed a congressional complaint. ( Doc. No. 16-1 at PageID 355-356.) Indeed, on September 2, 2018 Appellant, in a lengthy email with Brumfield copied, informed Jonathan Landon that he was looking into filing a congressional complaint. (Doc. No. 16-2 at PageID 564.) On September 6, 2018, Palmer informed Landon that he had filed a congressional complaint. (*Id.* at PageID 582.)

Shortly after Appellee was informed about the Congressional complaint he was retroactively charged with 367 days of AWOL. Palmer Depo. 247-248.

Appellant and Appellee disagrees on what Appellant was told about the type of information that needed to be provided for the leave. The District Court totally ignored Appellant's explanations and totally adopted. Appellee's argument even though there were genuine issues of fact. Appellant consistently maintained that London told him he didn't have to provide the medical discrimination until he

returned to work. (*Id*. at PageID 346-347.) However, Appellee had begun the

AWOL process two weeks prior to Palmer returning to work. (*Id*. at PageID 339-

340, 345.)

## CONCLUSION

Appellant Terry Palmer began working for the U.S. Air Force in 1985 and

continued to work for Appellee until he was forced to retire in February 2019 after

being noticed for removal of his employment, a total of thirty four years. Until

2017, Appellant had not received any discipline of any kind and had always

received positive performance reviews.

In 2017 Mr. Palmer began to experience incidents where Caucasian female

co-employees raised concerns about various interactions with him as well as

certain female supervisors raising concerns about his work performance. In every

instance Appellant requested to meet with his supervisors about the matters, but all

these requests were denied… and often discipline followed shortly thereafter. In

addition, Appellant often engaged in protected activity such as filing EEO

complaints, IG Complaints and making Congressional inquiries. Many times

discipline followed shortly thereafter. Clearly, this is evidence of retaliation.

Many of Appellant's assertions herein were contested by Appellee. In

reaching its Decision on Appellee's summary judgment decision, the District

Court's in every instance, decided the factual issue in Appellee's favor. However,

this should be a determination made by a jury as these involve issues of material

fact. As such, the Decision of the District Court should be reversed and this matter

remanded to the District Court for a trial on the merits.

Respectfully submitted,


/s/ David M. Duwel
Attorney for Appellant Terry Palmer
130 W. Second Street, Suite 2101
Dayton, Ohio  45402
937.297-1154 phone
937.297-1152 fax
david@duwellaw.com

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5699 words including the parts of the corrected brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and this corrected brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this corrected brief has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman, 14 point font.

/s/ David M. Duwel
February 21, 2025

## Certificate of Service

I certify that on February 21, 2025 the foregoing document was served on all parties or their counsel of record using the Court's electronic filing system which will notify Appellee's counsel of its filing and provide an electronic copy of this corrected brief.

/s/ David M. Duwel
David M. Duwel

ADDENDUM:

## Designation of Relevant District Court Documents

| Document | | Description | Page ID #s |
|---|---|---|---|
| RE | 1 | Complaint | 3 |
| RE | 16-1 | Deposition of Terry Palmer | 131 |
| RE | 16-1 | Deposition of Terry Palmer | 138-41 |
| RE | 16-1 | Deposition of Terry Palmer | 148-151 |
| RE | 16-1 | Deposition of Terry Palmer | 153 |
| RE | 16-1 | Deposition of Terry Palmer | 187- 189 |
| RE | 16-1 | Deposition of Terry Palmer | 190 |
| RE | 16-1 | Deposition of Terry Palmer | 200-201 |
| RE | 16-1 | Deposition of Terry Palmer | 202 |
| RE | 16-1 | Deposition of Terry Palmer | 208, 217 |
| RE | 16-1 | Deposition of Terry Palmer | 210 |
| RE | 16-1 | Deposition of Terry Palmer | 224 |
| RE | 16-1 | Deposition of Terry Palmer | 229-230 |
| RE | 16-1 | Deposition of Terry Palmer | 232 |
| RE | 16-1 | Deposition of Terry Palmer | 238 |
| RE | 16-1 | Deposition of Terry Palmer | 245-246 |
| RE | 16-1 | Deposition of Terry Palmer | 247-248 |
| RE | 16-1 | Deposition of Terry Palmer | 261 |
| RE | 16-1 | Deposition of Terry Palmer | 262-263 |
| RE | 16-1 | Deposition of Terry Palmer | 274-278 |
| RE | 16-1 | Deposition of Terry Palmer | 284 |
| RE | 16-1 | Deposition of Terry Palmer | 295 |
| RE | 16-1 | Deposition of Terry Palmer | 298-299 |
| RE | 16-1 | Deposition of Terry Palmer | 318 |
| RE | 16-1 | Deposition of Terry Palmer | 323-325 |
| RE | 16-1 | Deposition of Terry Palmer | 330-333 |
| RE | 16-1 | Deposition of Terry Palmer | 337 |
| RE | 16-1 | Deposition of Terry Palmer | 339-340, 345 |
| RE | 16-1 | Deposition of Terry Palmer | 346-347 |
| RE | 16-1 | Deposition of Terry Palmer | 352 |
| RE | 16-1 | Deposition of Terry Palmer | 355-356 |
| RE | 16-1 | Deposition of Terry Palmer | 378-381 |
| RE | 16-1 | Deposition of Terry Palmer | 423-425 |

| RE | 16-1 | Deposition of Terry Palmer | 438-441 |
|----|------|----------------------------|---------|
| RE | 16-2 | Palmer Deposition Exhibit<br>Notice of Proposed Removal | 509-510 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Palmer Response to Proposed Reprimand | 511-517 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Decision to Reprimand | 518 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Brumfield/Bowers Emails | 529-531 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Landon Email | 550-551 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Palmer Email | 564 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Palmer Email | 582 |
| RE | 16-2 | Palmer Deposition Exhibit<br>Notice of Proposed Removal | 598-600 |
| RE | 17-2 | Notice of Personnel Action | 928-929 |
| RE | 18 | Motion for Summary Judgment | 1001, 998 |
| RE | 21 | Response Motion Summary<br>Judgment | 1040, 1034<br>1036 |
| RE | 22 | Reply In Support Motion<br>Summary Judgment | 1046 |
| RE | 23 | Entry and Order Granting<br>Motion Summary Judgment | 1056-1078<br>1075 |