No. 24-3755

In the

# United States Court of Appeals
## for the Sixth Circuit

---

TERRY PALMER,

*Plaintiff-Appellant,*

v.

DEPARTMENT OF THE AIR FORCE,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Ohio
No. 3:23-cv-127 (Rose, J.)

---

**BRIEF FOR DEFENDANT-APPELLEE DEPARTMENT
OF THE AIR FORCE**

---

For the Appellee:

KELLY A. NORRIS
Acting United States Attorney

KEVIN KOLLER
Assistant United States Attorney
221 E. Fourth Street
Cincinnati, Ohio 45202
(513) 684-3711

# TABLE OF CONTENTS

Table of Authorities ................................................................... iii

Statement Regarding Oral Argument .................................... vii

Statement of Jurisdiction ......................................................... 1

Issues Presented ....................................................................... 2

Statement of the Case .............................................................. 3

    A.  Factual history ............................................................. 3

        1.  The Air Force reassigns Palmer to a different
           directorate after he requests a transfer following a
           dispute with a co-worker ..................................... 4

        2.  Palmer fails to acquire required system access despite
           repeated directives from his supervisor, resulting in a
           written reprimand ............................................... 5

        3.  Palmer transfers to a different AFSAC division, where
           he repeatedly ignores his new supervisor's instructions,
           resulting in a five-day suspension ..................... 8

        4.  Palmer goes on medical leave, but never submits the
           necessary paperwork to document his leave ................. 10

        5.  Palmer voluntarily resigns from the Air Force after
           being issued a notice of proposed removal ..................... 13

    B.  Procedural history ................................................ 14

        1.  EEO proceedings............................................... 14

        2.  District court proceedings ................................. 16

Summary of the Argument ..................................................... 22

Argument ............................................................................... 24

    I.    Palmer was not discriminated against based on his race
        or gender .................................................................... 25

        A.    The district court correctly found that Palmer cannot
             make out a *prima facie* case of race or sex
             discrimination................................................. 26

        B.    Even if Palmer could make out a *prima facie* case,
             the Air Force had legitimate, non-discriminatory
             reasons for the challenged actions................................. 34

    II.   The Air Force did not retaliate against Palmer.................. 39

    III.  Palmer was not subjected to a hostile work environment .. 47

Conclusion............................................................................ 52

Certificate of Compliance ....................................................... 53

Designation of Relevant District Court Documents ............................ 54

Certificate of Service ............................................................. 55

# TABLE OF AUTHORITIES

<u>Cases:</u>

*Argrawal v. Montemagno*, 574 F. App'x 570 (6th Cir. 2014) .................. 30

*Babb v. Wilkie*, 589 U.S. 399 (2020).......................................................... 40

*Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24 (1978) ............. 35

*Blume v. Potter*, 289 F. App'x 99 (6th Cir. 2008).................................... 42

*Bormuth v. Cty. of Jackson*, 870 F.3d 494 (6th Cir. 2017)...................... 24

*Boss v. Castro*, 816 F.3d 910 (7th Cir. 2016) .......................................... 28

*Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000) ........... 47

*Buckley v. Sec'y of Army*, 97 F.4th 784 (11th Cir. 2024)......................... 40

*Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046
      (8th Cir. 2007)................................................................................... 46

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................ 24

*Crain v. McDonough*, 63 F.4th 585 (7th Cir. 2023) ................................ 40

*Cregget v. Jefferson Cty. Bd. of Educ.*, 2012 WL 3104508,
      491 F. App'x 561 (6th Cir. 2012)...................................................... 29

*Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707
      (6th Cir. 2021).................................................................................... 29

*Dodd v. Donahoe*, 715 F.3d 151 (6th Cir. 2013) ..................................... 32

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344
      (6th Cir. 1998)............................................................................... 30–31

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .............................. 48

*Gammons v. Adriot Med. Sys., Inc.*, 91 F.4th 820 (6th Cir. 2024) ......... 42

*Goldblum v. Univ. of Cincinnati*, 62 F.4th 244 (6th Cir. 2023) ............. 32

*Gomez-Perez v. Potter*, 553 U.S. 474 (2008) ...................................... 39, 40

*Green v. Brennan*, 578 U.S. 547 (2016) ............................................ 30, 39

*Greer v. Paulson*, 505 F.3d 1306 (D.C. Cir. 2007) .................................. 28

*Harrell v. Delaware N. Cos.*, 642 F. App'x 543 (6th Cir. 2016) ............. 30

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ...................................... 48

*Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328
    (6th Cir. 2008) ................................................................................ 38

*Khalaf v. Ford Motor Co.*, 973 F.3d 469 (6th Cir. 2020) ........................ 47

*Kitlinski v. U.S. D.O.J.*, 994 F.3d 224 (4th Cir. 2021) ............................ 40

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) .............. 39, 41

*Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2004) ........................... 25–26

*Levine v. DeJoy*, 64 F.4th 789 (6th Cir. 2023) ...................... 24, 25, 26, 35

*Lockett v. Marsh USA, Inc.*, 354 F. App'x 984 (6th Cir. 2009) ............. 33

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................. 25, 34

*McMillian v. Potter*, 130 F. App'x 793 (6th Cir. 2005) ........................... 30

*McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887 (6th Cir. 2024)..... 27, 49

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (6th Cir. 2008).......... 45

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ................................... 27

*Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002) .................................. 43

*Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723
    (10th Cir. July 23, 2024) ................................................................ 40

*Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833
    (6th Cir. 2024) ................................................................................ 49

*Quinn v. St. Louis Cty.*, 653 F.3d 745 (11th Cir. 2011) .......................... 28

*R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Intern'l*,
    335 F. App'x 516 (6th Cir. 2009) ............................................... 28, 38

*Shah v. General Elec. Co.*, 816 F.2d 264 (6th Cir. 1987) ....................... 34

*Steiner v. Henderson*, 121 F. App'x 622 (6th Cir. 2005) ........................ 43

*Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013) ........................... passim

*Tingle v. Arbors at Hilliard*, 692 F.3d 523 (6th Cir. 2012) .................... 37

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009) ...................... 35

*Williams v. Zurz*, 503 F. App'x 367 (6th Cir. 2012) ............................... 45

*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006) ................ 31

*Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400 (6th Cir. 2021) ............ 41, 47

<u>Statutes:</u>

28 U.S.C. § 1291.......................................................................................... 1

28 U.S.C. § 1331.......................................................................................... 1

29 U.S.C. § 633........................................................................... 40

42 U.S.C. § 2000.................................................. 1, 25, 39, 40

Other authorities:

Fed. R. Civ. P. 56 ..................................................................... 24

## STATEMENT REGARDING ORAL ARGUMENT

The facts and legal arguments of the parties are adequately presented in the briefs and the record. Oral argument is therefore unnecessary.

# STATEMENT OF JURISDICTION

Jurisdiction was proper in the district court under 28 U.S.C. § 1331 because Plaintiff-Appellant Terry Palmer alleged violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. The district court entered summary judgment in favor of Defendant-Appellee on July 29, 2024. Palmer filed a notice of appeal on August 28, 2024. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# ISSUES PRESENTED

1. Whether the district court erred in awarding summary judgment in favor of the Department of the Air Force on Palmer's race and gender disparate treatment discrimination claims.

2. Whether the district court erred in awarding summary judgment in favor of the Department of the Air Force on Palmer's retaliation claims.

3. Whether the district court erred in awarding summary judgment in favor of the Department of the Air Force on Palmer's claims that he was subjected to a hostile work environment based on his race and his gender and in retaliation for engaging in protected activity.

# STATEMENT OF THE CASE

Plaintiff-Appellant Terry Palmer, an African-American male, claimed that his supervisors in the Department of the Air Force ("Air Force") discriminated against him based on his race and gender, retaliated against him for engaging in protected activity, and subjected him to a hostile work environment when they disciplined him for repeatedly failing to follow instructions. (R. 1, complaint at 1–16.) [1] The district court awarded summary judgment in favor of the Air Force on all claims. (*See* R. 23, order at 1056–78.) Palmer appeals that order.

## A. *Factual history*

Palmer began work as a civilian budget analyst intern in the United States Air Force in 1985. (R. 16-1, deposition at 131.) Around 1990, he transitioned to a role of financial manager. (*Id.* at 135.)  From 1996 on, he worked in various civilian offices at Wright Patterson Air Force Base in Dayton, Ohio—generally lasting two to four years before transferring positions. (*Id.* at 139–48.)

---

[1]  Citations to those parts of the record that have been electronically filed include the record entry number, a brief description, and the PAGE ID#.

1. <u>The Air Force reassigns Palmer to a different directorate after
   he requests a transfer following a dispute with a co-worker</u>.

From 2015 to 2017, Palmer worked as a financial manager in the
F-16 division of the Fighters and Bombers directorate. (R. 16-1,
deposition at 149.) In April 2017, two of his co-workers accused him of
treating the people in the division unfairly. (*Id.* at 153–56, 168.) The
dispute escalated in September 2017, when a co-worker alleged that
Palmer made a threatening gesture toward her. (*Id.* at 196.) Following
an investigation, Palmer and the co-worker were issued no contact
orders. (*Id.* at 153–54, 187–88.) Palmer's then-supervisor also issued
him a notice of possible disciplinary action and recommended that he
seek counseling.  (*Id.* at 187.)

Palmer attributed the dispute to the professional jealousy of his
co-workers, filed grievances against his supervisors with the EEO and
Inspector General's offices, and requested that he be transferred to a
different organization. (*Id.* at 172, 191, 193; *see also* R. 16-3, deposition
exhibits at 709–10 (inspector general complaint).) On or around October
9, 2017, the Air Force transferred Palmer to the Air Force Security
Assistance & Cooperation (AFSAC) Directorate. (R. 16-1, deposition at
202, 232; R. 16-3, deposition exhibits at 668 (EEO affidavit).) Palmer

4

never received any discipline related to the dispute with his co-worker, and the present suit only alleges claims arising after his transfer to AFSAC. (*Id.* at 202; *see also* R. 1, complaint at 2 (alleging discrimination beginning October 10, 2017); R. 17-2, MSJ exhibits at 897–98 (final agency decision).)

### 2. Palmer fails to acquire required system access despite repeated directives from his supervisor, resulting in a written reprimand.

Palmer was initially assigned to perform budget and cost analyses in AFSAC's financial management division under the supervision of Elaine Norsworthy, an African-American female, and later Dawn Holding, a Caucasian female. (R. 16-1, deposition at 228–29, 234; R. 16-2, deposition exhibits at 509 (notice).) Despite requesting that he be reassigned from the F-16 division, Palmer was unhappy with his transfer to AFSAC. (R. 16-1, deposition at 204.) Among other things, he believed that AFSAC was a "step down" and that the directorate did "mundane" work that was beneath him. (*Id.* at 204, 211.) In his first meeting with Norsworthy, he informed her that he was pursuing a transfer out of AFSAC and that he expected to be reassigned within a week. (*Id.* at 232.)

In order to perform his work at AFSAC, Palmer was required to out-process from the F-16 division and gain access to AFSAC's systems. (*Id.* at 238–39.) This process required him to submit specific forms to Norsworthy. He failed to do so for several months, however, despite repeated instructions from Norsworthy. (R. 16-2, deposition exhibits at 509–10 (notice).) This was, in part, because he still hoped to be transferred out of AFSAC. (*See id.* at 512, 515 (response).)

As of December 14, 2017, Palmer still had not gained full system access. On that day, he emailed Norsworthy that he would like to delay submitting the forms until his transfer request was resolved. (*Id.*; *see also id.* at 515.) Norsworthy did not agree to this and directed him to submit the forms to her by 11:00 am. (*Id.* at 509.) Palmer did not do so. (*Id.* at 510.) Norsworthy then gave him a new deadline of 9:00 am the following day and issued him an interim notice for failure to follow instructions. (*Id.* at 510.)

On February 12, 2018, Norsworthy followed up with a written notice of proposed reprimand. (R. 16-2, deposition exhibits at 509–10 (notice).) The notice outlined Palmer's failure to send her the forms needed to gain system access, as she had instructed. It also cited to the

relevant Air Force policies that Palmer had violated and informed
Palmer that he could submit a written or oral reply within twenty days
to Marie Ely—his second-level supervisor who would decide whether to
issue a reprimand. (*Id.*)

Palmer submitted a written response on March 15, 2018. (R. 16-2,
deposition exhibits at 511–17 (response).) At no point in his response
did Palmer claim either that he had complied with Norsworthy's
instruction to submit the required forms by December 14, 2017 or that
Norsworthy had somehow delayed his system access by signing in the
wrong location on the forms. (*See id.* at 511–17; *cf.* R. 16-1, deposition at
261–62 (advancing this claim for the first time).) Rather, he conceded
that, while he had worked on obtaining "some system access" prior to
December 14, he conveyed to Norsworthy on that day that he "may not
need full access due to me being possibly reassigned." (R. 16-2,
deposition exhibits at 515 (response).) He further indicated that, on
December 14, he had elected to "complete some work assignments" prior
to going on leave the following day, presumably in lieu of completing the
forms as directed. (*Id.*)

Ely found the allegations in the notice supported and issued a reprimand on April 4, 2018. (R. 16-2, deposition exhibits at 518 (decision).) The reprimand did not affect Palmer's pay or the conditions of his employment. Pursuant to Air Force policy, a copy of the letter was to be placed in Palmer's electronic personnel folder for two years, and be removed after this time period. (*Id.*)

3. <u>Palmer transfers to a different AFSAC division, where he repeatedly ignores his new supervisor's instructions, resulting in a five-day suspension.</u>

On April 30, 2018, Palmer was reassigned to the delivery reporting division of AFSAC, where he worked under the supervision of Darla Brumfield. (R. 16-1, deposition at 295, 298; R. 16-3, deposition exhibits at 669 (EEO affidavit).) Brumfield assigned Palmer to work on disbursed, undelivered progress payments (PPDUs). (*See, e.g.*, R. 17-1, MSJ exhibits at 772, 882 (emails).) Palmer felt he was well qualified to perform the delivery reporting work and considered himself a subject matter expert. (R. 16-1, deposition at 301.) He was not happy with the reassignment, however, and still actively pursued a transfer out of AFSAC altogether.  (*Id.* at 295–96, 300–01.)

On May 10, 2018, ten days after he started his new position, Palmer delegated some of his workload to an intern, Sean Bowers. (R. 16-2, deposition exhibits at 530–31 (email).)  When Brumfield learned of this, she emailed Palmer that day, informing him that this was improper and that he did not have authority to delegate his duties or direct others' workloads. (*Id.* at 529.) Despite this instruction, Palmer sent three additional emails in the following days assigning work to individuals outside of the delivery reporting division. (*Id.* at 532–33; *id.* at 534–35; *id.* at 536–37.)  Supervisors in the other sections forwarded the emails to Brumfield and flagged that Palmer should not be assigning work to others. (*Id.* at 532–38.)

In June 2018, Brumfield issued Palmer a notice of proposed suspension based on his failure to follow her instruction not to delegate his work to others. (R. 16-2, deposition exhibits at 539–41 (notice) and 542 (decision to suspend).) As with the reprimand, Palmer was afforded an opportunity to submit a response to the decisionmaker, which in this case was Jodi Pierri, AFSAC's chief financial officer. (*Id.* at 540.) Palmer elected not to do so, despite requesting (and being granted) an extension of the response period. (*Id.* at 542 (decision to suspend).) In

9

July 2018, Pierri found the allegations in the notice of proposed

suspension to be supported by the evidence and suspended Palmer for

five days without pay. (*Id.*) Palmer served the suspension from July 30

through August 3, 2018. (*See id.*)

4. Palmer goes on medical leave, but never submits the necessary paperwork to document his leave.

On August 8, 2018, Palmer went to urgent care after feeling ill

earlier in the week. (R. 16-1, deposition at 334–35.) Palmer ultimately

did not return to work until October 22, 2018. (*Id.* at 335–37.) Pursuant

to Air Force Policy, Palmer was required to provide his supervisors with

medical documentation for any sick leave in excess of three consecutive

workdays. (R. 16-2, deposition exhibits at 543 (memo).) The policy

required that the documentation "be administratively acceptable to the

supervisor," "cover all absences beyond the third workday," and "specify

that the employee was incapacitated for duty for the entire period

covered by the statement." (*Id.* at 544.)  Per the policy, the medical

documentation should include, at a minimum, "a diagnosis and

estimate of the expected date of full or partial recovery" as well as

additional information as "necessary and relevant." (*Id.*)

Prior to Palmer taking leave, his second-level supervisor, Jonathan Landon, sent him an email reminding him of the Air Force's medical documentation requirement. (R. 16-2, deposition exhibits at 550 (email).) While Palmer provided Brumfield a short doctor's note on August 12th, that note only covered his absences through August 10th. (*Id.* at 543 (memo); *id.* at 572 (note).) Brumfield emailed Palmer on August 14th and 15th reminding him that he would need to provide an additional note to cover any absences after August 10th. (*Id.* at 552–54 (emails).) She also attached the medical documentation requirements as well as instructions for invoking FMLA leave, in case he wanted to go that route. (*Id.*) Those emails directed him to provide the required medical documentation by close of business on August 28th. (*Id.*)

On Friday, August 17, 2018, Palmer submitted a medical note from a doctor. (R. 16-2, deposition exhibits at 576 (note).) The three-sentence note, however, did not meet the medical documentation requirements. It indicated only that Palmer was "having a cardiac workup done," and stated that he may return to work on September 11th. (*Id.*)  Landon responded the following Monday. He re-sent Palmer the medical documentation requirements and informed him he would

11

need to submit proper documentation upon his return to work on September 11th. (R. 16-2, deposition exhibits at 559–60 (email).) Landon and Brumfield also sent additional emails on September 5th and 10th, respectively, reminding Palmer that he would need to submit proper medical documentation upon his return. (*Id.* at 562–65 (emails).)

On September 13th, Palmer submitted a new, two-sentence note from his doctor.  That note indicated that the doctor had seen Palmer in his office on September 10th and that he was extending his leave until October 11th. (R. 16-2, deposition exhibits at 580 (note).) As with the previous note, it did not include a diagnosis or specify that Palmer was incapacitated for duty for the period covered by the statement.

On September 18th, Brumfield sent Palmer a memo by certified mail regarding the need to provide medical documentation for his leave. The memo included the documentation requirements from the relevant Air Force Instruction. It also informed Palmer that none of the three medical notes he had submitted met these requirements. (*Id.* at 545 (memo).) Brumfield directed him to provide proper documentation no later than October 2, 2018 and stated that failure to do so would result

12

in his Sick Leave being changed to AWOL, retroactive to August 13, 2018. (*Id.*)

Palmer did not provide the requested documentation. Accordingly, on October 3, 2018, Brumfield sent him a priority letter, via FedEx, informing him that his Sick Leave was being converted to AWOL. (R. 16-2, deposition exhibits at 583–91 (letter).) On October 17, 2018, Palmer submitted another medical note from his doctor. (*Id.* at 594 (note).)  That note also did not comply with the Air Force's requirements and, as such, did not result in the reversal of his AWOL designation. (*Id.* at 595 (email).)

5.  <u>Palmer voluntarily resigns from the Air Force after being issued a notice of proposed removal.</u>

On October 29, 2018, Linda Sny, the deputy director of AFSAC, issued Palmer a notice of proposed removal. (R. 16-2, deposition exhibits at 598–600 (notice).) The notice set forth two reasons for removal: First, Palmer was AWOL for 360 hours between August 13 and October 12, 2018 due to his failure to provide sufficient medical documentation for his requested sick leave. (*Id.* at 598.) Second, Palmer delayed or failed to complete his assigned duties on at least four occasions. (*Id.*) In one instance, his repeated failure to meet a deadline—which was extended

13

after he failed to meet the initial deadline—caused his division to miss a higher-level deadline. (*Id.* at 598; *see also* R. 17-1, MSJ exhibits at 794–828 (emails).)

On November 30, 2018, Palmer and his attorney met with Brigadier General Sean Farrell for over forty-five minutes, during which time Palmer submitted his reply to the notice of proposed removal. (R. 16-1, deposition at 386–87.) Palmer, however, ultimately elected to voluntarily retire, effective February 2019, prior to General Farrell issuing a decision on the notice of proposed removal. (R. 17-2, MSJ exhibits at 929 (SF-50).) Palmer's SF-50 indicates he retired to obtain retirement benefits. (*Id.*)

*B. Procedural history*

1. <u>EEO proceedings</u>

Palmer initially contacted the EEO office about his experiences at AFSAC on April 28, 2018. (*See* R. 17-2, MSJ exhibits at 898 (final agency decision).) On June 28, 2018—two weeks after he received his notice of proposed suspension—Palmer filed a formal EEO complaint. (R. 16-3, deposition exhibits at 661–67 (EEO complaint).) The complaint alleged that four of his supervisors at AFSAC had discriminated against

14

him based on his race and sex; retaliated against him in response to him filing a prior EEO complaint related to events that occurred when he worked in the F-16 division; and subjected him to a hostile work environment. (*Id.* at 661, 665.) The complaint listed eight discrete incidents. (*Id.* at 665.) This included that he had been reprimanded for failing to follow instructions related to his system access; that he had been threatened with AWOL for arriving late to work one day; that Brumfield had treated him "in a rude and condescending manner"; and that he had received a notice of proposed suspension related to his delegation of work to others. (*Id.* at 665.)

On or around September 6, 2018, while his EEO complaint was pending, Palmer filed a Congressional inquiry with the office of his local Congressman. (R. 16-1, deposition at 371–72; R. 16-2, deposition exhibits at 518 (email) and 597 (release).) That inquiry alleged, among other things, that his supervisors in AFSAC had issued him a "bogus" reprimand and five-day suspension in retaliation for engaging in protected activity. (R. 16-2, deposition exhibits at 597 (release).)

On January 2, 2019, Palmer amended his formal EEO complaint to add eleven additional discrimination and retaliation claims. (R. 17-2,

15

MSJ exhibits at 893–94 (EEO letter).) These included claims related to the notice of proposed removal and the decision to designate him AWOL in October 2018. (*Id.*) Palmer never amended his complaint following his February 2019 resignation, however. Nor did he ever allege that his resignation was involuntary.

The Air Force rejected all of Palmer's claims in a Final Agency Decision issued in February 2023. (R. 17-2, MSJ exhibits at 896–915.) The decision found that the record was devoid of any evidence to support Palmer's "conclusory statements that the actions of the agency were discriminatory." (*Id.* at 910–12.) It also concluded that the agency had "articulated legitimate, nondiscriminatory reasons for its challenged actions" and that Palmer had not proven that these reasons were a pretext for discrimination or retaliation. (*Id.* at 912.)

2. <u>District court proceedings</u>

In May 2023, Palmer filed suit in the United States District Court for the Southern District of Ohio. (R. 1, complaint at 1–16.) He alleged his supervisors treated him differently from his white and female co-workers and subjected him to a hostile work environment based on his race and gender in violation of Title VII of the Civil Rights Act of 1964.

16

(*Id.* at 5–6.) He also claimed that the Air Force retaliated against him and subjected him to a hostile work environment because he engaged in activity protected by the Civil Rights Act. (*Id.* at 6–7.)

The government moved for summary judgment following the close of discovery. (R. 18, motion at 987–1027.) The government noted that many of the incidents about which Palmer complained did not even qualify as actionable adverse employment actions. Moreover, Palmer could not make out a *prima facie* case of discrimination because he had not identified any similarly situated comparators who were treated more favorably than him. (*Id.* at 998–99.) And even if Palmer could establish a *prima facie* case, his disparate treatment claims still failed because the Air Force had legitimate, non-discriminatory, non-pretextual reasons for its actions toward Palmer. Among other things, he had failed to follow his supervisor's instruction to send her the forms for system access; repeatedly delegated his work to others without authorization despite being instructed not to; and failed to provide proper documentation for his extended medical leave. (*Id.* at 1002–08.)

The government asserted that Palmer's retaliation claims failed for similar reasons.  Specifically, there was insufficient evidence to

17

establish any causal connection between the challenged actions and Palmer's protected activity. Additionally, even if Palmer could show a connection, the undisputed evidence indicated that the Air Force had legitimate, non-discriminatory reasons for its actions, which were not a pretext for retaliation. (*Id.* at 1012–16.)  Finally, Palmer's hostile work environment claims failed because there was no evidence that he was subjected to severe or pervasive harassment, let alone any harassment linked to his race, sex, or protected activity. (*Id.* at 1008–11.)

Palmer opposed summary judgment. (R. 21, response at 1028–43.) While the fact section of his response outlined seven incidents, he did not advance any arguments in his argument section as to why any of those incidents qualified as adverse employment actions.  With respect to similarly situated comparators, he identified one co-worker, Angela Brown, who fell under Norsworthy's supervision, but offered no evidence that she had engaged in similar conduct as him. (*Id.* at 1040.) He also referenced another "Angela" who had allegedly requested reassignment. He did not, however, include a last name or any identifying details regarding this second Angela. (*Id.*)

Palmer separately asserted, without citation, that he was entitled to a "very strong inference of discrimination" (*Id.* at 1039.) He provided no evidence, however, that any action was taken against him because of his race, sex, or protected activity.  Rather, he asserted that he "perceived that there was a racial connection to a lot of things going on," and claimed he was subject to a hostile environment based on his belief that African-American men, in general, are often negatively stereotyped. (*Id.* at 1040–41.) Lastly, Palmer did not respond to the government's proffered legitimate reasons for its actions, let alone offer any evidence that those reasons were a pretext for discrimination or retaliation.

The district court granted the government's motion and dismissed the complaint in July 2024. (R. 23, order at 1056–78.) It noted that Palmer had failed to address, let alone rebut, the government's argument that certain incidents, including the reprimand, did not qualify as adverse employment actions. (*Id.* at 1064–68). It also found that Palmer had failed to demonstrate that Angela Brown or the second Angela were similarly situated employees as needed to create an inference of race or sex discrimination. (*Id.* at 1068–70 & n.4.) There

19

was no evidence that either individual had failed to gain appropriate system access or had delegated their work to others without authorization.  Moreover, because Brown had never worked under Brumfield, she was not a valid comparator for any actions that occurred while Palmer was under Brumfield's supervision. (*Id.* at 1070.)

With respect to retaliation, the court noted it was unclear which actions formed the basis of those claims. (*Id.* at 1074 & n.5 (highlighting that Palmer had made "little effort" in his response to clarify this).) While Palmer had not cited any caselaw or directly responded to the government's arguments, the Court addressed (and rejected) three possible retaliation claims, relating to (1) a December 2017 EEO meeting, (2) a March 2018 EEO meeting, and (3) the Congressional inquiry Palmer filed in early September 2018. (*Id.* at 1074–78.) First, to the extent Palmer alleged that his reprimand was in retaliation for attending an EEO meeting in December 2017, the court noted that the reprimand stemmed from Palmer's failure to secure system access and that Palmer had proffered insufficient evidence to establish a causal connection between the reprimand and the protected activity.  Second, the Court found that being threatened with AWOL in March 2018 after

20

arriving late to work was not a materially adverse action. Third, the court concluded that Palmer had also failed to show a causal connection between his October 2018 notice of proposed removal and the Congressional inquiry. (*Id.* at 1075–76.)

Finally, the court found that Palmer had "utterly failed to establish the type of pervasive intimidation, ridicule, and insult that typifies hostile work environment claims." (*Id.* at 1072.) He had not provided any examples of pervasive conduct that would render the AFSAC work environment hostile, any examples of conduct taken in retaliation for engaging in protected activity, or any evidence that any investigation conducted by AFSAC was tainted by a racial or gender animus. (*Id.* at 1072–73.) Instead, he relied "on his own perceptions of how African-American men are perceived in general and imposes that view on AFSAC without any concrete evidence in support of that perception." (*Id.*) As such, the court concluded that the hostile work environment claims also failed as a matter of law.

This appeal ensued.

## SUMMARY OF THE ARGUMENT

The district court correctly found that all of Palmer's claims failed as a matter of law. First, Palmer has failed to proffer any direct or circumstantial evidence that he was treated differently because of his race or gender.  He has not identified any similarly situated white or female employees who were treated differently despite engaging in similar conduct as him as necessary to create an inference of discrimination. Even if Palmer could make out a *prima facie* case of discrimination, the undisputed evidence establishes that the Air Force had legitimate, non-discriminatory and non-pretextual reasons for the actions it took toward Palmer.  Among other things, he failed to follow his supervisor's instructions regarding gaining system access, repeatedly delegated work to others after being instructed not to, and failed to provide proper medical documentation for his extended medical absence despite repeated reminders from his first and second-level supervisors.

Second, Palmer's retaliation claims likewise fail.  There is no evidence linking any of the challenged actions to Palmer's protected EEO activity. And even if he could make out a *prima facie* case of

retaliation, he offers no evidence to rebut the Air Force's legitimate, nondiscriminatory reasons for its actions.

Finally, Palmer's hostile work environment claims fail because he has not adduced any evidence that he was subject to any harassment, let alone severe or pervasive harassment that affected the conditions of his employment.  Moreover, even if Palmer subjectively perceived his work environment as hostile, there is no evidence of any animus toward him based on his race, gender, or protected activity.

# ARGUMENT

This Court reviews a district court's grant of summary judgment *de novo. Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017) (en banc). Summary judgment is warranted if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the evidence must be viewed in the light most favorable to the non-moving party, "'the plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Bormuth*, 870 F.3d at 503 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal alterations omitted). Moreover, "the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party." *Levine v. DeJoy*, 64 F.4th 789, 796 (6th Cir. 2023) (cleaned up).

## I.  Palmer was not discriminated against based on his race or gender.

Title VII of the Civil Rights Act prohibits employers from discriminating based "on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16.[2] Palmer concedes he has no direct evidence of race or sex discrimination, and instead relies on the *McDonnell Douglas* tripartite burden-shifting framework. (Br. at 10.) *See DeJoy*, 64 F.4th at 797; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To carry the initial *prima facie* burden under that framework, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.[3] *DeJoy*, 64 F.4th at 797.

---

[2] Palmer's brief on appeal cites to Title VII's general anti-discrimination provision, 42 U.S.C. § 2000e-2(a), rather than its federal sector provision, 42 U.S.C. § 2000e-16. (*See* Br. at 10.) While there are differences in the provisions, *see infra* n.9, Palmer has relied solely on caselaw applying § 2000e-2(a) and does not claim that the federal-sector provision requires a different analysis or result on his facts.

[3] This Court has adapted this test for cases of reverse discrimination, including where, as here, a male plaintiff claims he was treated differently because of his gender. *See Leadbetter v. Gilley*, 385 F.3d 683,

If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to produce evidence that it took the challenged actions for legitimate, non-discriminatory reasons. *Id.* To satisfy his burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citation omitted). Instead, the defendant need only raise a genuine issue of fact, through the introduction of admissible evidence that sets forth its reasons. *Id.* Finally, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

A. The district court correctly found that Palmer cannot make out a *prima facie* case of race or sex discrimination.

The government does not contest the first two prongs of the *prima facie* standard. Many of the incidents about which Palmer complains, however, do not constitute adverse employment actions. Moreover, to the extent he can establish any adverse employment action, his claims still fail at the *prima facie* stage because he cannot establish that he was treated differently than similarly situated comparator employees.

---

690 (6th Cir. 2004). The government did not rely on that adapted standard below, and Palmer's claims fail under the normal framework.

First, under this Court's precedents, to challenge a discrete act in a disparate-treatment claim, a plaintiff must show "some harm respecting an identifiable term or condition of employment." *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).) This may involve "a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Id.* On appeal, Palmer narrows his list of incidents to four events that he claims qualify as adverse employment actions: (1) his April 2018 reprimand; (2) his July 2018 five-day suspension; (3) the decision to designate him AWOL between August and October 2018 after he failed to provide proper medical documentation; and (4) his October 2018 notice of proposed removal. (Br. at 11.) At a minimum, however, neither the reprimand nor the notice of proposed removal qualify as adverse employment actions.[4]

---

[4] The government does not contest that the five-day suspension without pay qualifies as an adverse employment action. Additionally, while an AWOL designation may in some situations qualify as an adverse employment action, Palmer fails to develop any argument on appeal that his AWOL designation caused a change in the terms or his

Initially, Palmer has waived any argument that the written reprimand qualifies as an adverse employment action because he never responded to the government's argument in the district court that it did not qualify. (*See* R. 18, mot. at 999–100; R. 23, order at 1065 & n.3 (highlighting Palmer's failure to respond to the government's arguments).) *See also R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Intern'l*, 335 F. App'x 516, 521 (6th Cir. 2009) ("It is well established that an argument not raised before the district court cannot be considered on appeal to this Court."); *accord Quinn v. St. Louis Cty.*, 653 F.3d 745, 754 n.8 (11th Cir. 2011).

In any event, the written reprimand does not qualify as an adverse employment action as it did not include any loss of pay, a

---

conditions of his employment. *Compare, e.g., Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (holding AWOL designation was not actionable because "requiring an employee to substantiate his time off (and noting when he does not)" does not constitute an adverse employment action) *with Greer v. Paulson*, 505 F.3d 1306, 1318 (D.C. Cir. 2007) (holding AWOL designation was actionable where employee testified about serious hardship she experienced as a result of AWOL status).

In any event, as noted *infra*, Palmer's claims related to the suspension and AWOL designation fail as a matter of law because he has not identified any non-class comparator who was treated more favorably and because the Air Force had legitimate, non-discriminatory, non-pretextual reasons for suspending Palmer and designating him AWOL.

demotion, a suspension, or any change in Palmer's responsibilities. While the reprimand letter was placed in Palmer's personnel file, the reprimand was scheduled to be removed from the file after the completion of a two-year period. (R. 16-2, deposition exhibits at 518 (notice).) In similar circumstances, this Court has repeatedly held that reprimands are not actionable under Title VII and other anti-discrimination statutes. *See, e.g.*, *Cregget v. Jefferson Cty. Bd. of Educ.*, 2012 WL 3104508, 491 F. App'x 561, 566 (6th Cir. 2012) (table opinion); *Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 716 (6th Cir. 2021); *cf. Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013).

The notice of proposed removal also does not qualify as an adverse employment action. That notice did not affect the terms and conditions of Palmer's employment. (*See* R. 16-2, deposition exhibits at 509 (notice).) It only advised him that the Air Force was contemplating doing so. Furthermore, the notice provided Palmer an opportunity to present his case against removal, which Palmer did.  Palmer, however, voluntarily resigned prior to the Air Force determining whether removal was warranted, and thus cannot claim the notice of proposed

removal was an adverse action.[5] *See McMillian v. Potter*, 130 F. App'x 793, 797 (6th Cir. 2005) (holding letter that merely proposed action did not qualify as an adverse employment action); *Argrawal v. Montemagno*, 574 F. App'x 570, 576–77 (6th Cir. 2014); *see also Harrell v. Delaware N. Cos.*, 642 F. App'x 543, 545 (6th Cir. 2016) ("One who voluntarily resigns may not bring a claim under Title VII.").

Second, in any event, all of Palmer's disparate treatment claims fail because he has not identified any similarly situated comparators who were treated more favorably as necessary to make out a *prima facie* case. While a plaintiff need "not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated," he must show that he and the comparator are "similar in all of the *relevant* aspects." *Ercegovich v.*

---

[5] As the government argued below, and the district court found, Palmer's complaint cannot be construed to raise a wrongful discharge or constructive termination claim. (R. 23, order at 1063, n.1.) The undisputed evidence establishes that Palmer voluntarily retired rather than face possible removal. (*See* R. 17-2, MSJ exhibits at 928 (SF-50 indicating he retired to obtain retirement benefits).) Notably, Palmer never amended his EEO complaint to bring such a charge. *Cf. Green v. Brennan*, 578 U.S. 547, 553 (2016) (holding that plaintiff must initiate constructive discharge claim with EEO within forty-five days of resignation). Palmer did not respond to the government's arguments below and does not challenge this ruling on appeal.

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation omitted). In the disciplinary context, this includes showing that the plaintiff and any proposed comparators "engaged in acts of comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quotation and emphasis omitted). Relevant factors may include whether the individuals "have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Ercegovich*, 154 F.3d at 352).

Here, Palmer has only identified one possible comparator—Angela Brown.[6] But, as the district court found, Brown does not qualify as a valid comparator for multiple reasons. First, Brown only worked under the supervision of Norsworthy (and then Holding) and, unlike Palmer, never transferred to the delivery reporting section. Accordingly, Brown can only be a possible comparator for the events that took place under Norsworthy's supervision. The only challenged action under

---

[6] While Palmer referenced a second "Angela" in his district court briefing, he does not claim on appeal that she qualifies as a possible comparator.

31

Norsworthy, however, was the reprimand, which as noted above does not qualify as an adverse employment action. Because Brown never worked under the supervision of Brumfield, nor was subject to the standards of the delivery reporting division, she is not a valid comparator for the five-day suspension, the AWOL designation, or the notice of proposed removal. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 255 (6th Cir. 2023) (individuals were not valid comparators because they reported to different supervisors).

Brown separately does not qualify as a comparator for any of the alleged actions because there is no evidence (or even allegation) that she engaged in similar conduct to that for which Palmer was disciplined. Among other things, Palmer does not claim that Brown failed to follow her supervisor's directions, that she failed to gain system access, that she delegated her work to others without authorization, or that she failed to provide proper medical documentation for an extended absence. *Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013) (holding that plaintiff had not identified valid comparators because there was no allegation that comparators had engaged in similar actions).

32

On appeal, Palmer claims, without any supporting evidence, that Brown is nevertheless a valid comparator because she had performance issues and once threw something across the room.[7] (Br. at 12.) Even crediting Palmer's claims, however, those allegations do not render Brown a comparator because Palmer was not disciplined for behavioral outbursts or even poor performance. Moreover, the comparison also fails because the record is silent as to what, if any, discipline Brown might have received from Norsworthy for any performance or behavioral issues that she may have had. Indeed, Palmer offers only his own unsubstantiated hearsay that another co-worker reported Brown's behavior to Norsworthy. (Br. at 12.) This, however, is insufficient to show that Brown was treated more favorably than Palmer.

---

[7] Palmer also asserts that he "never observed Brown behaving in [a] similar manner with other Caucasian employees." (Br. at 12.) To the extent Palmer is alleging that Brown treated him differently because of his race, that allegation has no bearing on the claims here, where Brown did not have any supervisory authority over Palmer and Palmer does not allege that Brown was involved in any of allegedly adverse actions. *Cf. Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 994–95 (6th Cir. 2009) ("Statements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden ... of demonstrating animus." (quotation omitted)).

Finally, Palmer asserts without any legal citation, that he is able to use other "evidence that suggests an inference of discrimination" to satisfy the fourth prong of the *McDonnell Douglas prima facie* standard. (Br. at 12–13.) But Palmer does not explain what other type of evidence—beyond similarly situated comparators being treated differently—would create an inference of discrimination in this case. *Cf. Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987) ("Absent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination."). Nor does he provide any factual citation to support his claim that "there is significant evidence in this case which creates an inference of discrimination." (Br. at 13.)  To the contrary, as the district court found, the record is devoid of any evidence showing that Palmer was treated differently because of his race or sex. Under these circumstances, the court correctly concluded that Palmer could not make out a *prima facie* case of race or sex discrimination.

B. <u>Even if Palmer could make out a *prima facie* case, the Air Force had legitimate, non-discriminatory reasons for the challenged actions.</u>

An employer satisfies his burden to articulate a legitimate, non-discriminatory reason for an adverse employment action if "he simply

explains what he has done or produces evidence of legitimate, nondiscriminatory reasons." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (quoting *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)) (cleaned up). This requirement is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Id.*; *Levine*, 64 F.4th at 797.

Here, the Air Force identified legitimate, non-discriminatory reasons for each of the actions it took toward Palmer. First, the notice of proposed suspension listed seven specifications describing how Palmer had failed to follow instructions. (R. 16-2, deposition exhibits at 539–40 (notice).) This included that he repeatedly sent emails to other individuals instructing them to perform tasks after his supervisor had reminded him that the did not have the authority to delegate his assigned duties. (*Id.*; *see also id.* at 529–38 (emails).) The decision to suspend confirmed that the suspension was issued for these reasons consistent with Air Force policy—and not because of Palmer's race or sex. (*Id.* at 542 (decision).)

Second, the undisputed evidence likewise established that the Air Force designated Palmer as AWOL between August and October 2018

35

not because of his race or gender, but because he repeatedly failed to provide sufficient documentation for his extended absence. Brumfield and Landon repeatedly emailed Palmer to remind him of the documentation requirement both before and during his leave. (*See* R. 16-2, deposition exhibits at 552–56, 559, 562, 566 (emails).) Brumfield also sent Palmer a letter via registered mail in September 2018 that recapped the prior correspondence, copied the relevant instruction, and directed him to provide the proper documentation by October 2, 2018. Finally, on October 3rd, Brumfield sent him a letter explaining that his time sheets had been changed to AWOL because he had not complied with the Air Force's requirements. (R. 16-2, deposition exhibits at 583 (letter).) While Palmer submitted three cursory notes from his treating physician (*see id.* at 576, 580, 594; *see also id.* at 572), those notes fell well short of Air Force requirements—a fact that Brumfield explained to him. (*See id.* at 595.)

Third, the record also establishes that the Air Force acted for legitimate, non-discriminatory reasons with respect to the events that do not constitute adverse employment actions.  For instance, the notice of proposed reprimand and the reprimand letter explained that Palmer

36

was being reprimanded for failing to follow his supervisor's instructions regarding obtaining system access. (R. 16-2, deposition exhibits at 509–10 (notice) & 518 (decision).) Palmer's response to the notice of proposed reprimand did not contest that he had, in fact, failed to send Norsworthy the required forms by 11:00 am on December 14, 2017 as instructed.[8] (*See* R. 16-2, deposition exhibits at 515 (response).) Rather, he indicated that he instead focused on completing other work that day prior to going on the leave the following day. (*Id.*)

Similarly, the undisputed evidence establishes that the notice of proposed removal was issued for legitimate, non-discriminatory reasons. As explained in the notice, Palmer (1) had been AWOL for 360 hours between August and October 2018; and (2) had delayed and/or

---

[8] The fact section of Palmer's brief on appeal repeats his claim, first asserted in his deposition, that he complied with Norsworthy's directives and that his system access was delayed because Norsworthy signed in the wrong space. (Br. at 5.) Palmer, however, never advanced such a claim in his response to the notice of proposed suspension or in his EEO affidavit. (*See* R. 16-2, deposition exhibits at 515 (response); R. 16-3, deposition exhibits at 678 (EEO aff.).) Nor has he ever adduced any evidence, such as emails or other documents, to support this claim. As such, to the extent his fact section can be construed to assert that the Air Force's proffered reason had no basis in fact, that "bare assertion . . . is insufficient to call [the Air Force's] honest belief into question, and fails to create a genuine issue of material fact." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012).

37

failed to complete his assigned duties on multiple occasions, and in one instance caused his section to miss an important deadline. (R. 16-2, deposition exhibits at 598–600 (notice).) This conduct violated Air Force Instruction 36-703, Civilian Conduct and Responsibility, which provides that employees must be present for duty unless excused and must discharge their assigned duties effectively. (*Id.* at 599.)

Finally, Palmer has waived any claim that the proffered legitimate non-discriminatory reasons for any of the actions were pretextual. Palmer did not respond to the Air Force's proffered reasons in his district court briefing, let alone offer any evidence of pretext. (*See generally* R. 21, response at 1038–42.) His brief on appeal likewise ignores the legitimate, non-discriminatory reasons proffered below. *Sheet Metal Workers Intern'l*, 335 F. App'x at 521; *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("Issues not raised by an appellant in his opening brief or issues referred to in a perfunctory manner without developed argumentation are deemed waived.").

In any event, nothing in the record suggests that the reasons for the disciplinary actions were other than those proffered by the various

notices and letters that the Air Force provided to Palmer. Rather, the
record is clear that Palmer repeatedly ignored his supervisors'
instructions—to gain system access, to not delegate his work, to provide
proper medical documentation, and to timely complete his work—to the
detriment of his division and his directorate. The undisputed evidence
establishes that any adverse actions were taken because of this and not
because of his race or gender.

## II.    The Air Force did not retaliate against Palmer.

"Title VII prohibits discriminating against an employee because
that employee has engaged in conduct protected by Title VII." *Laster v.
City of Kalamazoo*, 746 F.3d 714, 729–30 (6th Cir. 2014); *see also* 42
U.S.C. 2000e-16; *id.* § 2000e-3(a). While the Supreme Court has not yet
addressed whether retaliation claims are actionable against federal
employers under Title VII, the government does not contest that issue
for the purposes of this appeal. *See Green v. Brennan*, 578 U.S. 547, 551
n.1 (2016); *Gomez-Perez v. Potter*, 553 U.S. 474, 488 n.4 (2008).[9]

---

[9] Both Palmer and the district court analyze his retaliation claim under
Title VII's general anti-retaliation provision, 42 U.S.C. § 2000e-3(a),
rather than under Title VII's federal sector provision, 42 U.S.C.
§ 2000e-16. (*See* Br. at 15; R. 23, order at 1073.) This Circuit has

To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected

---

traditionally taken this approach. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Some Circuits have recently concluded, however, that Title VII federal sector retaliation claims derive directly from § 2000e-16 rather than § 2000e-3(a). *See Crain v. McDonough*, 63 F.4th 585, 591 n.4 (7th Cir. 2023); *Buckley v. Sec'y of Army*, 97 F.4th 784, 792 (11th Cir. 2024). They have reached that conclusion based on the Supreme Court's decision in *Babb v. Wilkie*, interpreting the ADEA's similar federal sector provision, 29 U.S.C. § 633a(a). 589 U.S. 399, 406–07 (2020); *see also Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (holding that § 633a(a) prohibits retaliation based on the filing of an age discrimination complaint). The Supreme Court in *Babb* held that under the ADEA federal sector provision, a plaintiff may establish liability by showing that age was the but-for cause of some differential treatment and that the differential treatment played some role in a personnel action. *Babb*, 589 U.S. at 408. Establishing entitlement to make-whole relief such as reinstatement or back pay requires further showing that age was a but-for cause of the ultimate challenged action. *Id.* at 413.

This Court has not addressed the applicability of *Babb* to Title VII and need not do so here. Palmer does not rely on *Babb,* and does not argue, much less show, that his protected activity was the but-for cause of any intermediate differential treatment that in turn played a role in a personnel action. *See, e.g., Kitlinski v. U.S. D.O.J.*, 994 F.3d 224, 232 n.7 (4th Cir. 2021) (declining to address *Babb* where plaintiff's claims failed in any event); *Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723, at *3–4 (10th Cir. July 23, 2024) (same).

activity and the materially adverse action." *Laster*, 746 F.3d at 730;

*Taylor*, 703 F.3d at 336. An action is materially adverse if it would

"have dissuaded a reasonable worker from making or supporting a

charge of discrimination." *Taylor*, 703 F.3d at 336. If a plaintiff makes

out a *prima facie* case of retaliation, the burden shifts to the defendant

to articulate legitimate, nondiscriminatory reasons for its actions. *Wyatt*

*v. Nissan N. Am., Inc.*, 999 F.3d 400, 419–20 (6th Cir. 2021). Finally,

the burden shifts back to the plaintiff to establish by a preponderance of

the evidence that these reasons were a pretext for retaliation. *Id.*

As the district court noted here, Palmer's summary judgment

briefing made "little effort . . . to clarify which actions were retaliatory."

(R. 23, order at 1074, n.5.) His legal argument contained a single

paragraph related to his retaliation claims. (R. 21, response at 1039.)

That paragraph did not include any legal or factual citations or develop

any argument as to why any action by the Air Force was causally

connected to any protected activity. (*Id.*) On appeal, Palmer now asserts

the Air Force retaliated against him for attending EEO meetings on

December 12, 2017 and May 14, 2018 and for filing a Congressional

41

inquiry on or about September 6, 2018. (Br. at 16–18.) Even if Palmer preserved these three claims below, each fails for multiple reasons.

First, Palmer claims that the Air Force retaliated against him for attending a December 2017 EEO meeting when he was issued a notice of reprimand in February 2018 and then reprimanded in April 2018. This claim fails at the outset because this Court has held that a reprimand does not qualify as a materially adverse action for the purposes of a retaliation claim where, as here, it does not result in any disciplinary action. *Taylor*, 703 F.3d at 338.

Palmer also fails to show a causal connection between the December meeting and the decision to reprimand him. Palmer points to the two-month temporal proximity between the notice of reprimand and the December 17 EEO meeting to suggest that the two were causally connected. (*See* Br. at 17 (asserting the "proper measurement . . . is two, not four months").) But, where some time elapses between when the employer learns of the protected activity and the subsequent adverse action, temporal proximity, alone, is not sufficient to establish a causal connection. *Blume v. Potter*, 289 F. App'x 99, 106 (6th Cir. 2008); *Gammons v. Adriot Med. Sys., Inc.*, 91 F.4th 820, 827 (6th Cir. 2024).

This is especially true where the defendant provides evidence of alternative causation. *Steiner v. Henderson*, 121 F. App'x 622, 628 (6th Cir. 2005). Moreover, while Norsworthy was aware of the EEO meeting, there is no evidence that she was aware of the nature of the meeting. (R. 16-1, deposition at 247–48, 251.) There is also no allegation—let alone any evidence—that Ely, the reprimand decisionmaker, knew anything about the December 12th meeting. *Cf. Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (noting that a plaintiff must produce evidence "sufficient to establish that the individuals charged with taking the adverse employment action knew of the protected activity").

Additionally, the Air Force has offered evidence of alternative causation here. As noted above, the undisputed evidence establishes that Palmer was reprimanded for his repeated failures over the course of several months to follow his supervisor's directions related to gaining system access. (*See* R. 16-2, deposition exhibits at 509 (notice of proposed reprimand).). As such, even if Palmer could make out a *prima facie* case, his claim still fails because he has not shown the Air Force's legitimate reasons for reprimanding him were a pretext for retaliation.

Palmer's second claim—that Brumfield retaliated against him when she threatened to mark him AWOL in March 2018 after he arrived late to work on a day that he also had an EEO meeting—likewise fails for multiple reasons. (Br. at 17–18.) Palmer himself concedes that Brumfield was not aware that he had an EEO meeting that day (Br. at 17; R. 16-1, deposition at 325), as necessary to make out a *prima facie* case.  Additionally, merely threatening to charge a person with AWOL does not qualify as a materially adverse action. And in any event, Brumfield had a legitimate, non-retaliatory reason—*i.e.*, Palmer's tardiness—for threatening to mark him AWOL.  Palmer does not dispute that he arrived to work forty-five minutes late that day. (*See* R. 16-1, deposition at 321.) Nor has he offered any evidence that Brumfield used his tardiness as pretext to retaliate against him.

Palmer's final claim—that the Air Force issued him a notice of proposed removal in retaliation for him filing a Congressional inquiry—fails for similar reasons. Initially, a notice of proposed removal, standing alone, is not a materially adverse action.  The notice did not subject Palmer to any adverse employment consequences. And because the notice provided Palmer a full and fair opportunity to present his

44

case to a neutral decisionmaker, it would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor*, 703 F.3d at 336.

Palmer also fails to establish a causal connection between his filing of the Congressional inquiry and the decision to issue him a notice of proposed removal nearly two months later. Because some time elapsed between the protected activity and the issuing of the notice, Palmer was required to proffer other evidence of retaliatory conduct, beyond temporal proximity, to establish causality. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Williams v. Zurz*, 503 F. App'x 367, 372–73 (6th Cir. 2012) (holding approximately one-month gap was insufficient, standing alone, to create causal inference). Palmer has not done so. Instead, to minimize this time gap, Palmer's appellate brief focuses on the earlier decision to designate him AWOL. But even that determination did not occur until nearly a month after he filed his inquiry, and after his supervisors gave him multiple opportunities to submit the proper forms. (*See* R. 16-2, deposition exhibits at 543–45 (memo), 565 (email), and 583 (letter).) Moreover, the record establishes that his supervisors' concerns about the sufficiency of his medical leave

documentation (and warnings that his timesheets could be adjusted) pre-dated the filing of his Congressional inquiry. (*See* R. 16-2, deposition exhibits at 550, 552, 554, 556, 559 (emails).) This timeline undercuts any causal inference that the AWOL designation (or the notice of proposed removal) was taken in retaliation for filing the inquiry. *Accord Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1051 (8th Cir. 2007) (holding that a retaliation claim will not lie where a plaintiff engages in protected activity after supervisors began to investigate his job performance and noting that "complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy").

Finally, even if Palmer could make out a *prima facie* case, the notice of proposed removal set forth the legitimate, non-retaliatory reasons why the Air Force was considering removal. As with the other claims, Palmer did not respond to these reasons either in the district court or on appeal, and thus has waived any claim that these reasons were a pretext for retaliation.

**III.    Palmer was not subjected to a hostile work environment.**

To prevail on a race or gender-based hostile work environment claim, a plaintiff must establish that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race or sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (race discrimination); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462–63 (6th Cir. 2000) (sex discrimination). When a plaintiff claims that his employer created a retaliatory hostile work environment, the same standard applies, except that the plaintiff must establish he was subjected to severe or pervasive harassment that was based on his protected activity. *Wyatt*, 999 F.3d at 426.

As the district court found, Palmer's hostile work environment claims fail for multiple reasons under any theory.  First, Palmer has not adduced evidence that he was subjected to any conduct "severe or pervasive enough to create an objectively hostile or abusive work

environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). In evaluating this factor, courts consider the totality of the circumstances, including: (1) the frequency of the harassing conduct; (2) the severity of the harassing conduct; (3) whether the harassing conduct was physically threatening or humiliating, or merely offensive speech; and (4) whether the harassing conduct unreasonably interfered with the employee's work performance. *Id.* at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, Palmer has not identified any offensive speech or harassing conduct, let alone conduct that created an objectively hostile work environment. At most, he complained that Brumfield was rude and condescending to him. (R. 16-1, deposition at 298.) As the district court noted, however, condescending statements, standing alone, do not create an objectively hostile work environment. Moreover, when Palmer's second level supervisor offered him an opportunity to substantiate his claim against Brumfield, he failed to provide any

documentation or expand on how she was supposedly mistreating him. (*See* R. 17-1, MSJ exhibits at 752–53 (email).)

On appeal, Palmer claims that multiple female Caucasian supervisors nevertheless created a hostile work environment when they initiated various disciplinary actions without giving him an opportunity to explain himself. (Br. at 14–15.) He identifies only three actions, however—the reprimand, the five-day suspension, and the notice of proposed removal.[10] These isolated, discrete incidents do not constitute severe or pervasive harassment, especially where Palmer has not adduced any evidence suggesting that his supervisors weaponized the disciplinary process to target or belittle him. *Cf. Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024); *McNeal*, 117, F.4th at 903. Rather, the undisputed evidence establishes his supervisors followed standard procedures and afforded him an opportunity to respond to each of the notices consistent with Air Force

---

[10] The government notes that the reprimand was proposed by Norsworthy an African-American female. Additionally, because the five-day suspension is a discrete actionable event that did not contribute to the alleged hostile environment, it "cannot properly by characterized as part of a continuing hostile work environment" claim. *Ogbonna-McGruder v. Austin Peay State University*, 91 F.4th 833, 840 (6th Cir. 2024); *cf. McNeal*, 117 F.4th at 902–03.

policy: He filed a written response to the reprimand notice with the help of his union steward after being granted an extension of the deadline. (*See* R. 16-2, deposition exhibit at 510–18 (response); R. 16-3, deposition exhibits at 679 (EEO affidavit).) He was given an opportunity to respond to the notice of suspension, but ultimately elected not to do so after meeting with his union representative. (R. 16-2, deposition exhibits at 540 (notice).) And he prepared a response to the notice of proposed removal, which he and his lawyer presented to General Farrell. (R. 16-1, deposition at 386.) Under these circumstances, Palmer cannot show that the disciplinary proceedings constituted severe or pervasive harassment.

Second, Palmer's hostile work environment claims also fail because there is no evidence that even the conduct he subjectively perceived as harassing was based on his race or gender, or taken in response to his protected activity. For instance, he does not claim he was subjected to any gender or race-based comments or to any comments related to his protected activity. Nor does he offer any other evidence from which a factfinder could infer a discriminatory or retaliatory animus—such as evidence that other individuals were

treated differently. To the contrary, Palmer admitted that Brumfield struck a similar tone with many people in the office—undercutting his claim that she was targeting him because of his race, gender, or EEO activity. (R. 16-3, deposition exhibits at 686 (EEO affidavit).)

Similarly, Palmer has not adduced any evidence that the three disciplinary actions he claims created a hostile environment were tainted by any discriminatory or retaliatory animus. Rather, as noted *supra* Parts I.B and II, the undisputed evidence indicates that the challenged actions were taken for legitimate, non-discriminatory and non-retaliatory reasons—primarily related to Palmer's repeated failure to follow directions. As such, the district court correctly found that Palmer had "failed to demonstrate a valid hostile work environment claim under any theory." (R. 23, order at 1073.)

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

KELLY A. NORRIS
Acting United States Attorney


/s/ Kevin Koller
KEVIN KOLLER
Assistant United States Attorney
221 E. Fourth Street
Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
kevin.koller@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation provided in Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure. The brief contains 10,191 words of Century Schoolbook (14 pt) proportional type. Microsoft Word is the word-processing software that I used to prepare this brief.

/s/ Kevin Koller
KEVIN KOLLER

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

The following are relevant under Sixth Circuit Rule 30(g).

| Record number | Description | PAGE ID# |
|---|---|---|
| 1 | complaint | 1–16 |
| 16 | notice and exhibits | 108–750 |
| 17 | notice and exhibits | 751–986 |
| 18 | motion | 987–1021 |
| 21 | response | 1028–1043 |
| 23 | order | 1056–1078 |

## CERTIFICATE OF SERVICE

I certify that this Brief for Defendant-Appellee Department of the Air Force was served on counsel for Plaintiff-Appellant Palmer by filing with the Court's CM/ECF system this 7th day of May, 2025.


/s/ Kevin Koller
KEVIN KOLLER